UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

DARREN L. FAVREAU,    )
    Plaintiff    )
        )
        )
    v.    )    Civil Action No. 04-30246-MAP
        )
BERKSHIRE COUNTY JAIL,    )
    Defendant    )

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The defendant, Berkshire County Jail, the existence of which is expressly denied, submits the following memorandum in support of its motion for summary judgment with respect to the claims asserted against it in the above-captioned action.

### FACTS

The defendant hereby incorporates the facts asserted in its Concise Statement of Material Facts ("Concise Statement") by reference.

### ARGUMENT

The defendant is entitled to summary judgment in its favor since (1) it is not a juridical entity subject to this Court's jurisdiction (see page 2, *infra*); (2) plaintiff's claims for equitable and declaratory relief are moot because he is no longer an inmate at the Berkshire County Jail and the "paging system" of which he complains is no longer in effect there (see page 3, *infra*); (3) the plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a) and G.L. c. 127, § 38F (see pages 4-5, *infra*); and (4) his transfer to another correctional facility stems from legitimate penological interests unrelated to his "threatening to file a civil complaint" concerning that paging system (see pages 5-6, *infra*).

### I. The Summary Judgment Standard

In pertinent part, Fed. R. Civ. P. 56 provides:

> (b)     A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

> (c)     . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Accordingly, the defendant's motion for summary judgment should be granted because (as explained below) it has produced uncontroverted evidence establishing that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law" with respect to the claims asserted in plaintiff's Amended Complaint. See United States Fire Ins. Co. v. Producciones Padosa, Inc., 835 F.2d 950, 958 (1st Cir. 1987).

### II. The Named Defendant Is Not a Legal "Person"

The plaintiff's Amended Complaint names "the Berkshire County Jail" as sole defendant. Yet there is no such juridical entity. See paragraph 3 of the Affidavit of John J. Quinn. Since "[n]o such person existed," Bateman v. Wood, 297 Mass. 483, 485 (1937), "[t]he action was in truth brought against nobody," but is "a nullity." Chandler v. Dunlop, 311 Mass. 1, 5 (1942). This ground alone affords sufficient reason for this Court to dismiss plaintiffs' claims against the defendant as a matter of law. See Fed. R. Civ. P. 9(a) and 17(b); Comstock v. Pfizer Retirement Annuity Plan, 524 F. Supp. 999, 1002 (D. Mass. 1981); and Dodora Unified Communications, Inc. v. Direct Information PVT, Ltd., 379 F. Supp. 2d 10, 14-15 (D. Mass. 2005). See also the Second Affirmative Defense set forth in defendant's Answer to the Amended Complaint.

2

### III.  The Plaintiff's Injunctive and Declaratory Claims Are Moot

Among other things, the plaintiff has asked this Court to enter an injunction requiring "the law library [to be] opened back up." See the seventh prayer for relief in his Amended Complaint. See also his first and second prayers for relief, seeking a declaratory judgment that the library's closure was unlawful. However, regardless of whatever merit they may or may not have previously had, these requests are now moot and thus should be denied as a matter of law.

The jurisdiction of the federal courts is limited to the adjudication of "cases" and "controversies." See Article III, § 2 of the United States Constitution. Moreover, "[o]rdinarily, an actual controversy must exist at all stages of litigation to sustain federal court jurisdiction." Wilson v. Brown, 889 F. 2d 1195, 1197 (1st Cir. 1989). Hence, even when an action has been properly commenced, it must be dismissed as moot once the underlying controversy from which it arose ceases to exist. United States v. Munsingwear, 340 U.S. 36, 39-40 (1950).

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). Here, both forms of mootness apply. First, because the plaintiff is no longer incarcerated at the Berkshire County Jail, he has no stake in the operation of its law library. See paragraph 5 of the Affidavit of John J. Quinn. Second, his claims for injunctive and declaratory relief are no longer the subject of a "live" dispute, since their stated objective (i.e., having the law library at the Berkshire County Jail reopened to inmates) has already been accomplished. See paragraph 10 of the Affidavit of John J. Quinn. Consequently, those claims should be dismissed for mootness. Compare Knight v. Mills, 836 F. 2d 659, 670-671 (1st Cir. 1987); Wilson, 889 F. 2d at 1197-1198; Mitchell v. Massachusetts Dept. of Correction, 190 F. Supp. 2d 204, 216 (D. Mass. 2002); and Masonoff v. Dubois, 336 F. Supp. 2d 54, 56 (D. Mass. 2004).

3

## IV.  The Plaintiff Has Failed to Exhaust his Administrative Remedies

In pertinent part, the Prison Litigation Reform Act of 1995 ("PLRA") provides:

> No action shall be brought with respect to prison conditions under
> [42 U.S.C. § 1983] . . . or any other Federal law, by a prisoner
> confined in any jail, prison or other correctional facility until such
> administrative remedies as are available are exhausted.

See 42 U.S.C. § 1997e(a).

Massachusetts has statutory provisions of its own which directly dovetail with the PLRA.

For example, G.L. c. 127, § 38E states in relevant part:

> (a)     The [Commissioner of the Department of Correction] shall
> promulgate regulations to establish a fair, impartial, speedy and
> effective system for the resolution of grievances . . . by inmates . . .
>
> (c)     Grievances that may be brought by inmates . . . shall
> include all grievances arising out of or resulting from a condition
> of or occurrence during confinement. . . .

Meanwhile, G.L. c. 127, § 38F, goes on to declare in pertinent part:

> An inmate shall not file any claim that may be the subject of a
> grievance under [G.L. c. 127, § 38E] unless the inmate has
> exhausted the administrative remedy established pursuant to said
> section 38E; [except that] the court may consider such claim . . .
> for actions seeking equitable relief.

The regulations referred to in G.L. c. 127, § 38E are promulgated at 103 C.M.R. § 491.

Pursuant to those regulations, an administrative procedure for inmate grievances has been

adopted at the Berkshire County Jail.  See paragraph 12 of the Affidavit of John J. Quinn.  Under

that procedure, an aggrieved inmate must first (1) attempt to resolve the problem informally, then

(2) file a formal grievance with the Unit Manager for his "pod," and finally (3) appeal to the

Assistant Deputy Superintendent of Operations, before he may pursue a remedy in the courts if

all of his other efforts to obtain relief fail.  See paragraph 12 of the Affidavit of John J. Quinn.

4

In the case at hand, the plaintiff filed not just one but two separate grievances with the Unit Manager responsible for his "pod" concerning the operation of the law library at the Berkshire County Jail.  See paragraphs 13 and 16 of the Affidavit of John J. Quinn.  However, on both occasions, the plaintiff failed to appeal from the Unit Manager's unfavorable decision to the Assistant Deputy Superintendent of Operations.  See paragraphs 14-15 and 17-18 of the Affidavit of John J. Quinn.  In short, he failed to exhaust the administrative remedies available to him.

The plaintiff's failure to exhaust his administrative remedies, in turn, bars any claim that he might possibly assert under 42 U.S.C. § 1983 or any other federal law in light of the PLRA.  See Booth v. Churner, 532 U.S. 731 (2001); Porter v. Nussle, 534 U.S. 524 (2002); and Maraglia v. Maloney, 365 F. Supp. 2d 76,  79-82 (D. Mass. 2005).  That same failure is also fatal to any claim for damages (albeit not injunctive relief) that he might bring under state law by virtue of G.L. c. 127, § 38F.[1]  See Maraglia, 365 F. Supp. at 82 n. 5.  See also Rashad v. Hall, 2003 Mass. Super. LEXIS 453, *20-*23; and Brown v. Maloney, 2004 Mass. Super. LEXIS 153, *8-*10, copies of which are attached hereto as Addenda A and B.

### V.  There Is No Evidence Plaintiff's Transfer Was Retaliatory

In paragraph 11 of his Amended Complaint, the plaintiff alleges he was moved to the Hampden County Jail in retaliation for threatening to file suit about the law library policy at the Berkshire County Jail.  However, the defendant has adduced evidence that his transfer stemmed from legitimate penological interests unrelated to that policy.  See paragraphs 19-22 of the

---

[1] Admittedly, G.L. c. 127, § 38F, does not preclude the plaintiff's claims for equitable and declaratory relief regarding operation of the law library at the Berkshire County Jail.  But, as previously explained (see page 3, *supra*), those claims are barred as a matter of law because they are moot.

5

Affidavit of John J. Quinn. Absent any evidence to the contrary, therefore, summary judgment must enter for the defendant upon the plaintiff's "retaliation" claim against it.

Of course, the plaintiff may try to defeat the defendant's motion for summary judgment vis-à-vis his retaliation claim by demonstrating that a "genuine issue of material fact" regarding that claim precludes judgment from being entered in the defendant's favor "as a matter of law." However, in order to do so, the plaintiff must "go beyond the pleadings" and introduce rebuttal evidence sufficient to establish that such a genuine issue exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). That is because Fed. R. Civ. P. 56(e) specifically provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . ., by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment . . . shall be entered against the adverse party.

Accordingly, unless the plaintiff manages to "muster sufficient evidence to make out [his] claim" in this manner, the defendant will be "entitled to summary judgment as a matter of law." See Celotex Corp., 477 U.S. at 331 (Brennan, J., dissenting).

## CONCLUSION

The facts that (1) the defendant is not a juridical entity subject to the jurisdiction of this Court; (2) the plaintiff's claims for equitable and declaratory relief vis-à-vis the so-called "paging system" at the Berkshire County Jail are moot; (3) the plaintiff failed to exhaust his administrative remedies with respect to that paging system; and (4) the uncontroverted evidence shows his transfer to another correctional facility stemmed from legitimate penological interests unrelated to his "threatening to file a civil complaint" against it cumulatively entail that the defendant is entitled to judgment as a matter of law upon all of the plaintiff's claims.

In light of the foregoing, therefore, this Court should grant the defendant's motion for summary judgment.

Dated: *December 16, 2005*

THE DEFENDANT

By its attorney

Donald W. Goodrich, BBO No. 202200
For Donovan & O'Connor, LLP
1330 Mass MoCA Way
North Adams, MA 01247
Tel: (413) 663-3200
Fax: (413) 663-7970

CERTIFICATE OF SERVICE

I hereby certify that on *Dec. 6, 2005*, I have caused the foregoing document to be served on the parties to this matter by mailing a true copy, postage prepaid, to Mr. Darren L. Favreau, % Hampden County Jail and House of Correction, 629 Randall Road, Ludlow, MA 01056.

JRL:djb

7

# ADDENDUM A

Service: **Get by LEXSEE®**
Citation: **2003 Mass. Super. LEXIS 453 at 21**

*17 Mass. L. Rep. 226; 2003 Mass. Super. LEXIS 453, \**

Rahim Rashad v. Timothy Hall et al.

01-3615

SUPERIOR COURT OF MASSACHUSETTS, AT SUFFOLK

17 Mass. L. Rep. 226; 2003 Mass. Super. LEXIS 453

December 3, 2003, Decided
December 17, 2003, Filed

**DISPOSITION:** Defendants' Supplemental Motion to Dismiss Or, in the Alternative, for
Summary Judgment allowed; Plaintiff's Cross-Motion for Summary Judgment denied.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendants, a female correction officer and a correctional
center superintendent, filed a supplemental motion to dismiss or in the alternative, for
summary judgment in plaintiff Muslim inmate's declaratory judgment action. The inmate
responded with a cross-motion for summary judgment.

**OVERVIEW:** The inmate protested the use of female corrections officers for pat-searches
of male prisoners. His complaint attacked that policy. It also asserted that the officer
subjected the inmate to harassment and that she desecrated his religious materials. The
inmate did not file a grievance until after he filed his complaint and he failed to exhaust
the administrative grievance process. The allegations in the inmate's action could be
interpreted as presenting two distinct theories, a challenge to the policy of allowing female
corrections officers to pat-search male prisoners and a claim of retaliation against the
inmate for his religious beliefs. Summary judgment in favor of defendants was required on
either theory. The officer was not a policy maker, and thus a policy claim could not be
made against her. While such a claim could be made against the superintendent, it had
been rendered moot because the inmate had been transferred to another facility.
Likewise, there were no claims of harassment against the superintendent. While the
complaint stated a valid harassment claim against the officer, it failed because the inmate
had not exhausted his administrative remedies.

**OUTCOME:** The court allowed defendants' motion and denied the inmate's cross-motion
for summary judgment.

**CORE TERMS:** inmate, grievance, female, harassment, male, pat, correction,
superintendent, religious, summary judgment, accommodation, housed, memorandum,
grievance procedure, searched, injunctive relief, prison, administrative remedies, transferred,
harassing, notified, assigned, equitable relief, material fact, moving party, federal law,
individually, intimidation, declaratory, exhausted

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN1** Courts grant summary judgment where there are no genuine issues of material fact,
and the record entitles the moving party to judgment as a matter of law. Mass. R.

Get a Document - by Citation - 17 Mass. L. Rep. 226    Page 2 of 11

Case 3:04-cv-30246-MAP    Document 31-2    Filed 12/19/2005    Page 3 of 11

Civ. P. 56(c)  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN2 The summary judgment movant bears the burden of establishing that there is no
dispute of material fact on every relevant issue. A party moving for summary
judgment who does not bear the burden of proof at trial may demonstrate the
absence of a genuine dispute of material fact for trial either by submitting affirmative
evidence negating an essential element of the non-moving party's case, or by
showing that the non-moving party has no reasonable expectation of proving an
essential element of its case at trial.  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN3 Once the summary judgment movant establishes the absence of a triable issue, the
party opposing the motion must respond with evidence of specific facts establishing
the existence of a genuine dispute. The opposing party may not rest on the
allegations of the pleadings, nor may he rely on bare assertions and conclusions
regarding his own understandings, beliefs, and assumptions.  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN4 Mere contradictions of factual allegations, without evidentiary support, are
insufficient to raise questions of material fact to defeat a summary judgment motion.
The opposing party's obligation, rather, is to demonstrate the existence of admissible
evidence sufficient to meet his burden of proof on the issues raised by the
motion.  More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
HN5 In deciding motions for summary judgment, a court may consider pleadings,
depositions, answers to interrogatories, admissions on file and affidavits. The court
reviews the evidence in the light most favorable to the nonmoving party, but does
not weigh evidence, assess credibility or find facts.  More Like This Headnote

Governments > Federal Government > Claims By & Against
Constitutional Law > Civil Rights Enforcement > Prisoners > Prison Litigation Reform Act
HN6 See 42 U.S.C.S. § 1997e(a).

Governments > State & Territorial Governments > Claims By & Against
Administrative Law > Judicial Review > Reviewability > Exhaustion of Remedies
HN7 See Mass. Gen. Laws ch. 127, § 38F.


JUDGES: [*1]  Judith Fabricant, Justice of the Superior Court.

OPINIONBY: Judith Fabricant

OPINION: MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' SUPPLEMENTAL
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND
PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

The plaintiff, Rahim Rashad, is an inmate in the custody of the Massachusetts Department of
Correction (DOC), currently housed at MCI Norfolk. He filed this action on August 8, 2001,
complaining of pat searches conducted on him by a female correction officer, defendant
Janice Pina, while he was housed at Old Colony Correctional Center (OCCC). The defendants,

Get a Document - by Citation - 17 Mass. L. Rep. 226                     Page 3 of 11

Case 3:04-cv-30246-MAP     Document 31-2     Filed 12/19/2005     Page 4 of 11

Pina and Timothy Hall, the Superintendent of OCCC, moved to dismiss for failure to state a claim on which relief may be granted. After hearing on September 12, 2003, the Court allowed both sides to file supplemental materials. The defendants then filed a "Supplemental Motion to Dismiss, or in the Alternative, for Summary Judgment," with supporting affidavits and exhibits. The plaintiff has responded with a cross-motion for summary judgment. After review of all materials submitted, the Court concludes that the defendants' motion must be granted, and the plaintiff's cross-motion [*2] must be denied.

BACKGROUND

The plaintiff, Rahim Rashad, n1 has been an inmate in the custody of the Massachusetts Department of Correction since October of 1992. n2 For some period of time prior to January of 2002, the plaintiff was housed at OCCC, a level five security facility. Defendant Timothy Hall was then and remains superintendent of that institution. Defendant Janice Pina was then and remains an Inner Perimeter Security officer at OCCC.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n1 The plaintiff's original name was Larry Graham. The materials before the Court include two court records, one dated May 8, 1990, from Anderson County, Texas, and the other dated October 20, 1993, from Lowndes County, Georgia, both indicating that the plaintiff changed his name to Raheem Rashad.


n2 The defendants assert in their memorandum that the plaintiff's imprisonment arises from a conviction of rape. As evidence, the defendants supply a copy of an excerpt of grand jury testimony. Although that document is not competent evidence of the conviction, the plaintiff apparently does not contest the nature of the crime for which he is incarcerated. The grand jury testimony indicates that the offense occurred on May 27, 1984, that the victim was the plaintiff's former girlfriend, and that he assaulted her with a knife.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*3]

Pursuant to DOC and OCCC policy, inmates of the facility regularly undergo pat searches by corrections officers. Such searches occur as inmates go to and from meals, work and recreation areas, and other locations, as well as at random. According to the affidavit of defendant Hall, "an inmate can anticipate being pat searched several times each day by multiple correction officers. The purposes of such searches include detection of contraband, escape devices, and stolen property."

Pursuant to applicable collective bargaining agreements, as well as a 1987 agreement for judgment in a federal court action brought by the Department of Justice alleging sex discrimination in employment, DOC does not assign correction officers by sex. n3 Female officers at OCCC, as at other institutions, perform the full range of tasks of corrections officers, including conducting pat searches of male inmates.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n3 The one exception to this policy, according to the affidavits submitted, relates to strip searches, which are conducted only by officers of the same sex as the inmate, except in emergencies.

Get a Document - by Citation - 17 Mass. L. Rep. 226
Page 4 of 11
Case 3:04-cv-30246-MAP    Document 31-2    Filed 12/19/2005    Page 5 of 11

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*4]**

Rashad alleges that he is a devout Muslim, and that his Muslim faith prohibits him from physical contact with women other than close relatives. On December 5, 2000, the plaintiff sent correspondence to OCCC administration, described as "requesting that 'only' a male officer conduct a pat-search on you and secondly that the 'Holy Quran' not be handled by staff." n4 This correspondence elicited two responses. The first, by letter dated December 6, 2000, from Deputy Superintendent Lisa Mitchell, informed the plaintiff that "Subsequent to review, it is deemed your request is non-feasible." The second response, by letter dated December 12, 2000, from Director of Security David Nolan, informed the plaintiff that, because of the need for "consistent security practices for the safety of everyone," "Staff will conduct pat searches whether male or female of any inmate housed at this facility regardless of their race or creed," and that "if you are in possession of any item, whether on your person or in your assigned cell or housing unit it can and will be searched if staff deems necessary."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 Neither side has provided a copy of the plaintiff's December 5, 2000, correspondence. The quotation is from the response of Director of Security David Nolan.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*5]**

Notwithstanding these responses, Superintendent Timothy Hall met with the plaintiff regarding his request in March of 2001. Rashad did not at that time refer to any individual female officer by name, and did not allege any harassing or abusive conduct by any individual, but, according to Hall's affidavit, "merely kept reiterating that he did not wish to be pat searched by any female correction officer at OCCC." In that meeting Rashad presented to Hall, according to Hall's affidavit, "a permanent injunction implying that it applied to him." Hall checked with the DOC legal division, and learned that the injunction Rashad had presented applied only to another inmate, Raheem Rasheed Abubardar, who was not housed at OCCC.

Rashad followed that meeting with a memorandum to Hall dated March 9, 2001, reiterating his concern, and again asserting that "an inmate do possess an Court's order that prohibits female officers from pat-searching a Muslim inmate unless of danger to security or emergency." He pointed that "there are several male officers present within the halls," and inquired why those officers could not conduct searches of Muslim inmates. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 The memorandum says "Why can't a Muslim inmate be pat-searched by a female officers, since they are visible within the halls at all times." In context, it seems apparent that the word "female" was an error.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*6]**

Rashad next raised the issue in a memorandum dated May 11, 2001, to Director of Security Brenda Lobo. n6 He stated, "I am writing in regards to my religious belief that adheres that a male is not allowed to exhibit any female conduct with a woman that is not his or her spouse. I refer to *Raheem Rashaed v. Peter Pepe, et al.*, that was ordered that Female correction officers shall not conduct 'pat' searches of him, except under the following circumstances."

He then recited the exceptions stated in an order entered on January 14, 1998, in the case of *Raheem Rasheed Ahubardar v. Peter Pepe and Lori Jolly*, Middlesex Civil Action No. 97-2873.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n6 The record does not indicate whether Lobo had replaced Nolan, or OCCC had two positions with that title.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On August 8, 2001, Rashad filed this action, acting pro se. The complaint names Pina and Hall, stating that each "is sued individually and in his/her official capacity." The complaint invokes jurisdiction under G.L.c. 127, §§ 88, 89 **[\*7]** , and 90; c. 12, §§ 11(I) and (J), c. 231A, and 42 U.S.C. § 1983. Although the first paragraph recites that it is "for declaratory judgment, injunctive relief and damages," the prayer for relief makes no reference to damages, claiming only a declaration, injunction, attorneys fees, and "such other and further relief as this Court might deem just and proper." n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 At argument, the plaintiff indicated that he sought only declaratory and injunctive relief, and not damages. However, in his memorandum in opposition to the defendant's supplemental motion, he claims a right to damages for past injuries as a basis to avoid dismissal on mootness grounds.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The complaint alleges that the plaintiff notified Hall and Lobo of his request to be searched only by male officers, and of the religious basis for that request. The complaint further alleges that Rashad notified Lobo in May and June 2001 that "Pina was aggressively in her searches of the plaintiff and how the religious **[\*8]** matter that plaintiff had in his possession was dropped by defendant Pina, who in turns stepped on all of the material and swiped it with her feet," and further, that Pina "indicated that she would make his life miserable for five (5) days a week." After his report to Lobo, the complaint alleges, Pina "quit hasseling the plaintiff . . . for a few weeks." The complaint goes on to allege that on August 3, 2001, "Pina pulled him over and continue the same harassment as previously want to tell her boss that he is harassing him, 'tell her this too.' " The next day, "while going to the chowhall the defendant Pina commenced with the same tactics," causing Rashad to refuse to eat and return to his unit. Soon thereafter, when inmates were again moving from place to place, "defendant Pina continued the same harassing tactics and had plaintiff empty the contents of his religious documents and pockets. Steadly harassing the plaintiff . . . 'Defendant Pina, stated now you have something to complain about to my boss.' " Pina also said to plaintiff, according to the complaint, "if you were following your religion, as you claim you would not be here now." Based on these allegations, the complaint **[\*9]** seeks a declaration that "the defendants have deprived the Plaintiff of his right to exercise and express his religious beliefs," and an injunction that "the defendants forthwith to stop the female pat-searching of the plaintiff." n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n8 In response to the defendants' initial motion to dismiss, Rashad filed an affidavit attesting

to the truth of the allegations of the complaint. On that basis, the Court treats the complaint as if it were verified, for purposes of the summary judgment analysis. In connection with his present motion, Rashad has also submitted affidavits of two fellow inmates attesting in general terms to having observed Pina searching Rashad in an "aggressive" manner. Pina has submitted an affidavit denying that she ever engaged in any aggressive or harassing conduct toward Rashad, that she ever made the statements attributed to her, and that she ever treated Rashad's religious materials in the manner alleged. A factual dispute thus exists as to whether Pina did the things alleged in the complaint. For purposes of the present motion, the plaintiff is entitled to the benefit of that dispute; the Court accordingly assumes that she did.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[\*10]**

On August 22, 2001, after having filed his complaint in this case but apparently before having made service, n9 Rashad submitted an inmate grievance form for consideration by the OCCC's Institutional Grievance Coordinator, pursuant to G.L.c. 127, § 38E. His complaint, as set forth on the form, was "constant harassment by Janice Pina (IPS) hassling of Islamic & program related material." The Institutional Grievance Coordinator, Cliff Lauzon, docketed the complaint on August 25, 2001, as grievance no. 01-171, and notified Hall. Hall directed Deputy Superintendent Mitchell to "insure that the matter was promptly investigated." She assigned Unit Manager Paul Duford to meet with Rashad. Duford did so, and submitted to Hall a memorandum dated September 7, 2001, reporting that Rashad "claims that C.O. Pina harasses by constantly searching him & any items he carries every time she sees him. He claims she indicates that she will continue to do this. He claimed he brought it to Brenda's attention & it stopped for about 3 weeks but then it started again & continues." Hall reviewed Duford's report, and concluded that "Where this is a routine and necessary function of **[\*11]** her job as a correction officer, the pat searching of inmates, I found his complaint to have no substance." Hall reported this conclusion to Lauzon on November 8, 2001. On that same date, Lauzon denied the grievance and gave Rashad written notice of that decision, informing him that "It has been determined that there is no substance to your claim of harassment by c/o Pina against you."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n9 The docket reflects filing of returns of service on November 13, 2001, soon after denial of the grievance.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The inmate grievance procedure afforded Rashad another step; pursuant to 102 C.M.R § 491.12, Rashad had the right to appeal to Hall, as superintendent, within ten days of Lauzon's decision. The grievance form, on which Lauzon's notice of denial appeared, notified Rashad of that right immediately below Lauzon's signature. Had Rashad exercised that right, denial of the appeal by Hall would have automatically triggered further review by the Departmental Grievance Coordinator, as designee of **[\*12]** the Commissioner, pursuant to 103 C.M.R. §§ 491.06, 491.13. Rashad did not, however, exercise his right to appeal to Hall, and accordingly the grievance process terminated with Lauzon's denial. n10

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n10 The Department Grievance Coordinator, Kristie Ladouceur, states in her affidavit that, if Rashad had appealed to Hall and Hall's denial had been forwarded to her, she would have denied the appeal and referred Rashad to the Religious Services Review Committee, because

Get a Document - by Citation - 17 Mass. L. Rep. 226    Page 7 of 11

Case 3:04-cv-30246-MAP    Document 31-2    Filed 12/19/2005    Page 8 of 11

"this matter impacts more than one superintendent and would, in my opinion, require review by the Religious Services Review Committee."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On January 9, 2002, Rashad was transferred to MCI-Norfolk, a level four medium security facility. He remains there to the present. Pat searches are a routine part of inmates' daily lives at MCI Norfolk, as at OCCC. MCI Norfolk, like OCCC, has female corrections officers, and assigns them without regard to sex, including to assignments involving pat searches of male inmates. However, according **[*13]** to the affidavit of the Superintendent of the facility, "when an inmate requests to be pat searched by a male officer for religious reasons, his request is accommodated, provided that there is a male officer available at that point. On occasion, the male officer assigned to the exit may be unavailable. If that occurs, the female officer is not required to seek out a male officer but, rather, may perform the pat search herself." In his time at Norfolk Rashad has not filed any grievance relating to pat searches or other contact with female corrections officers.

Aside from the inmate grievance procedure, the Department provides a mechanism for inmate requests regarding religious accommodations; inmates may submit such requests to the Religious Services Review Committee on a Religious Services Request Form. According to the affidavit of the Department's Acting Director of Program Services, Rashad has utilized that procedure for certain requests regarding his practice of Islam, but has not done so with respect to the issue of pat-searches by female officers.

DISCUSSION

*HN1*This Court grants summary judgment where there are no genuine issues of material fact, and the record entitles the **[*14]** moving party to judgment as a matter of law. See Mass.R.Civ.P. 56(c); _Cassesso v. Commissioner of Correction_, 390 Mass. 419, 422, 456 N.E.2d 1123 (1983); _Community National Bank v. Dawes_, 369 Mass. 550, 553, 340 N.E.2d 877 (1976). *HN2*The moving party bears the burden of establishing that there is no dispute of material fact on every relevant issue. See _Pederson v. Time, Inc._, 404 Mass. 14, 16-17, 532 N.E.2d 1211 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a genuine dispute of material fact for trial either by submitting affirmative evidence negating an essential element of the non-moving party's case, or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. See _Flesner v. Technical Communications Corp._, 410 Mass. 805, 809, 575 N.E.2d 1107 (1991); _Kourouvacilis v. General Motors Corp._, 410 Mass. 706, 716, 575 N.E.2d 734 (1991).

*HN3*Once the moving party establishes the absence of a triable issue by either of these methods, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. **[*15]** See _Pederson v. Time_, 404 Mass. 14, 17, 532 N.E.2d 1211 (1989). The opposing party may not rest on the allegations of the pleadings, nor may he rely on "bare assertions and conclusions regarding [his own] understandings, beliefs, and assumptions." _Key Capital Corp. v. M&S Liquidating Corp._, 27 Mass.App.Ct. 721, 728, 542 N.E.2d 603 (1989). *HN4*Mere contradictions of factual allegations, without evidentiary support, are insufficient to raise questions of material fact to defeat a summary judgment motion. See _Madsen v. Erwin_, 395 Mass. 715, 721, 481 N.E.2d 1160 (1985), quoting _Olympic Junior, Inc. v. David Crystal, Inc._, 463 F.2d 1141, 1146 (3rd Cir. 1972). The opposing party's obligation, rather, is to demonstrate the existence of admissible evidence sufficient to meet his burden of proof on the issues raised by the motion.

*HN5*In deciding motions for summary judgment, the Court may consider pleadings,

Get a Document - by Citation - 17 Mass. L. Rep. 226

Page 8 of 11

Case 3:04-cv-30246-MAP    Document 31-2    Filed 12/19/2005    Page 9 of 11

depositions, answers to interrogatories, admissions on file and affidavits. The Court reviews the evidence in the light most favorable to the nonmoving party, but does not weigh evidence, assess credibility or find facts. See *Dawes*, 369 Mass. at 553; Mass. **[\*16]** R.Civ.P. 56(c); *Colley v. Benson, Young & Downs Insurance Agency, Inc.*, 42 Mass.App.Ct. 527, 528, 678 N.E.2d 440 (1997); see also *Kelley v. Rossi*, 395 Mass. 659, 663, 481 N.E.2d 1340 (1985).

The defendants contend that the plaintiff's complaint must be dismissed on a number of procedural and substantive grounds, including failure to exhaust administrative remedies. Before addressing those grounds, it is necessary to identify the precise nature of the plaintiff's claim. Review of his complaint, memoranda, and exhibits yields two alternative interpretations. First, the claim may be understood as a challenge to the policy of the Department of Correction, or of OCCC, of assigning female corrections officers to roles in which they must pat-search male inmates who object on religious grounds to physical contact with women. This appears to be the way the defendants understand the claim, and the way they understood the administrative grievance. Second, the claim may be understood as alleging that Officer Pina engaged in a campaign of harassment of the plaintiff, involving physical and verbal abuse and desecration of objects sacred to him, in retaliation for his having requested accommodation **[\*17]** for his religious practice. These are distinct theories, subject to different procedural and evidentiary requirements. The Court will address them in turn, referring to them, for convenience, as the policy claim and the harassment claim.

The plaintiff's policy claim is, by its nature, an equitable claim. If the claim were found to be meritorious, the proper remedy would be declaratory and injunctive relief. To have any effect, such relief would have to run against persons who have the power to control the policy in issue. Such persons would necessarily be officials of the Department, at a policy making level, in their official capacity. Defendant Pina, as a corrections officer, clearly has no such power; she does not make policy, nor does she have authority to depart from the policies set by her superiors. She is not even free to decline to conduct pat searches of male inmates when her assigned responsibilities require her to do so. For that reason, she is not a proper defendant with respect to the policy claim, and the complaint fails to state a claim against her on that theory.

Defendant Hall, as superintendent of OCCC, does have authority over policy at OCCC, but not at any other **[\*18]** facility of the Department of Correction. Hall was therefore a proper defendant, in his official capacity, at the time the complaint was filed, when the plaintiff was housed at OCCC. But the plaintiff is no longer housed at OCCC, having been transferred to Norfolk in January of 2002. n11 The question thus arises whether the policy claim against defendant Hall is moot. The plaintiff argues that it is not, because he could be transferred back to OCCC at any time. n12 Indeed he could, and in that sense the dispute is capable of repetition. But nothing before the Court indicates that the issue would tend to evade review, if it arises again. If the plaintiff were transferred back to OCCC, nothing would prevent him from seeking accommodation, by means of either the grievance procedure, or a request to the Religious Services Review Committee, or both. If he were to exhaust those remedies without satisfaction, nothing would prevent him from pursuing the issue in litigation against a properly named defendant. Accordingly, the Court concludes that the policy claim against defendant Hall is moot, and must be dismissed.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n11 As indicated *supra*, Norfolk provides a degree of accommodation to the plaintiff's objection to physical contact with female officers. The plaintiff has not expressed any dissatisfaction with the accommodation he receives at Norfolk, and has not filed any grievance on the subject at that institution. **[\*19]**

Get a Document - by Citation - 17 Mass. L. Rep. 226
Page 9 of 11
Case 3:04-cv-30246-MAP    Document 31-2    Filed 12/19/2005    Page 10 of 11

n12 The plaintiff asserts, without offering any evidentiary support, that he will be in DOC custody "until at least 2009."

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The harassment claim raises different issues. The facts presented, considered in the light most favorable to the plaintiff, are sufficient to state a claim. If Pina conducted herself toward the plaintiff as he claims in retaliation for his request for religious accommodation, a factfinder could reasonably conclude that she deprived him of rights protected by both state and federal law, and that she did so by means of threats, intimidation, and coercion, in violation of both the federal and state civil rights acts, 42 U.S.C. § 1983 and G.L.c. 12, §§ 11H, 11I. See Cale v. Johnson, 861 F.2d 943, 949-51 (6th Cir. 1988) (retaliation against prisoner for exercising right to complain of prison policy violates substantive due process); O'Connell v. Chasdi, 400 Mass. 686, 691-94, 511 N.E.2d 349 (1980) (supervisor's sexual harassment of employee constituted deprivation of right to equal protection [*20] by threats, intimidation or coercion); compare Longval v. Commissioner of Correction, 404 Mass. 325, 333, 535 N.E.2d 588 (1989) ("A direct violation of a person's rights does not by itself involve threats, intimidation or coercion"). Remedies for such violation could include damages against Pina individually, as well as declaratory and injunctive relief.

No such facts appear with respect to Hall, however. The complaint alleges no harassing conduct by Hall, nor does it allege any facts on which Hall could be held liable for Pina's conduct. It does not allege that Hall directed or encouraged such conduct, or even that he was ever informed of it and failed to act in response. Nor has the plaintiff offered any evidence, by way of affidavit or otherwise, to support any theory of liability on the part of Hall for harassment by Pina. Accordingly, this aspect of the complaint also must be dismissed as against Hall.

What remains then, is the claim against Pina individually for harassment. The Court must next consider the defenses raised as to this claim. Defendants argue that the Court cannot consider this claim because the plaintiff has failed to exhaust his administrative remedies, as [*21] required by both state and federal law. That requirement appears in federal law in the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which provides in pertinent part: HN6 "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." See generally Porter v. Nussle, 534 U.S. 516, 524, 152 L. Ed. 2d 12, 122 S. Ct. 983 (2002) (PLRA applies to all inmate suits about prison life, filed under § 1983, whether in state or federal court, regardless of the relief sought).

State law imposes a corresponding requirement for claims brought under state law, at General Laws c. 127, § 38F, which provides in pertinent part as follows:

HN7 An inmate shall not file any claim that may be the subject of a grievance under section 38E unless the inmate has exhausted the administrative remedy established pursuant to said section 38E; but the court may consider such claim if a final administrative resolution of a grievance filed pursuant to said section [*22] 38E has not been decided within 180 days from the date of filing such grievance, or if the inmate can demonstrate to the court that exigent circumstances exists which, if delayed pursuant to the requirements of this section, would jeopardize the life or seriously impair the health of the inmate, or, for actions seeking equitable relief.

Get a Document - by Citation - 17 Mass. L. Rep. 226

Page 10 of 11

Case 3:04-cv-30246-MAP    Document 31-2    Filed 12/19/2005    Page 11 of 11

The combined effect of these statutes is that the plaintiff's claim against defendant Pina cannot proceed under either the state or the federal civil rights act unless he exhausted his administrative remedies prior to filing suit. n13 The record before the Court establishes that he did not. Prior to suit, the plaintiff took no action under the grievance procedure. Thereafter, he did file a grievance, which was denied. n14 He did not, however, exhaust the grievance procedure by appealing the denial to the Superintendent, so as to trigger review at the Department level. That such review likely would have resulted in denial, as the plaintiff argues and the Departmental Grievance Coordinator acknowledges, does not solve the problem. Both Congress and the Massachusetts Legislature have established exhaustion of administrative remedies as a prerequisite [*23] to suit, and the Court is not free to excuse the plaintiff's failure to meet that prerequisite. The wisdom of that rule is apparent in these facts; if Rashad had pursued his grievance to conclusion, according to Ladouceur's affidavit, he would ultimately have been directed to the Religious Services Review Committee, which might have succeeded in resolving the problem to Rashad's satisfaction. The harassment claim against defendant Pina must be dismissed.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 It is apparent that none of the exceptions in G.L.c. 127, § 38F apply: the plaintiff makes no claim of a failure to decide on his grievance, or of exigent circumstances jeopardizing his life or health. Nor is the harassment claim one seeking equitable relief; although proof of the claim might warrant a grant of incidental equitable relief, the claim is in the nature of a tort.

n14 As indicated *supra*, the grievance as filed failed to alert the Grievance Coordinator, and the Superintendent, to the crux of the harassment claim. Although the grievance used the word "harassment," it did not provide the details alleged in the complaint, and did not indicate that the harassment was motivated by Rashad's request for religious accommodation. Similarly, it appears that Rashad left that information out of this interview with Unit Manager Paul Duford, so that Duford's report to the superintendent presented the grievance as accusing Pina of nothing more than doing her job in accord with the Superintendent's policies.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*24]**

CONCLUSION AND ORDER

For the reasons stated, the Defendants' Supplemental Motion to Dismiss Or, in the Alternative, for Summary Judgment is *ALLOWED*, and the Plaintiff's Cross-Motion for Summary Judgment is *DENIED*.

Judith Fabricant

Justice of the Superior Court

December 3, 2003

Service:  **Get by LEXSEE®**
Citation:  **2003 Mass. Super. LEXIS 453 at 21**
View:  Full
Date/Time:  Wednesday, November 23, 2005 - 2:56 PM EST

# ADDENDUM B

Get a Document - by Citation - 2004 Mass. Super. LEXIS 153       Page 1 of 6

Case 3:04-cv-30246-MAP      Document 31-3      Filed 12/19/2005      Page 2 of 7

Service: **Get by LEXSEE®**
Citation: **2004 Mass. Super. LEXIS 153 at 4**

*2004 Mass. Super. LEXIS 153, \**

Howard B. Brown v. Michael T. Maloney, as Commissioner of the Massachusetts Department of Correction

03-00651

SUPERIOR COURT OF MASSACHUSETTS, AT WORCESTER

2004 Mass. Super. LEXIS 153

April 9, 2004, Decided
April 14, 2004, Filed

**DISPOSITION: [\*1]** Plaintiff's motion for summary judgment denied and the defendant's motion for summary judgment allowed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff inmate filed a motion for summary judgment. Defendant Commissioner of the Massachusetts Department of Correction filed a motion to dismiss, or in the alternative, a motion for summary judgment. The inmate had brought suit seeking mandamus relief pursuant to Mass. Gen. Laws Ann. ch. 249, § 5 or declaratory relief pursuant to Mass. Gen. Laws Ann. ch. 231A, to have certain prison regulations amended or adopted.

**OVERVIEW:** The inmate had requested that the Massachusetts Department of Correction (DOC) amend its grievance regulation relating to the tape recording of disciplinary regulations and to limit the period of time for disciplinary sanctions for minor offenses. The Commissioner denied the inmate's requests, and the Superintendent subsequently denied the inmate's appeal of the Commissioner's denial. The court held that the Commissioner's choice not to adopt the inmate's proposed amendments was well within his discretion. The court noted that the Massachusetts Legislature clearly authorized the Commissioner to make and promulgate any rules and regulations with regard to correctional facilities. As a result, the inmate had no reasonable expectation of proving that he was entitled to relief in the form of mandamus and, therefore, the court allowed the Commissioner's motion for summary judgment. Further, as a result of the inmate's failure to exhaust all of the requirements of Mass. Gen. Laws Ann. ch. 127, § 38F, with regard to the processing of the grievance the inmate had filed with regard to the regulation amendments he sought, he was not entitled to declaratory relief as well.

**OUTCOME:** The court denied the inmate's motion for summary judgment and allowed the Commissioner's motion for summary judgment.

**CORE TERMS:** regulation, summary judgment, inmate, grievance, disciplinary, prison, amend, declaratory relief, administrative remedies, disciplinary hearing, tape recording, moving party, mandamus, disciplinary proceeding, writ of mandamus, reasonable expectation, regulations governing, protective custody, essential element, failed to exhaust, matter of law, demonstrating, requesting, promulgate, processing, recording, responded, recorded, prisoner, renumber

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Get a Document - by Citation - 2004 Mass. Super. LEXIS 153          Page 2 of 6

Case 3:04-cv-30246-MAP      Document 31-3     Filed 12/19/2005     Page 3 of 7

Civil Procedure > Summary Judgment > Summary Judgment Standard

*HN1* Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56(c). More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof

*HN2* The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. More Like This Headnote

Criminal Law & Procedure > Appeals > Extraordinary Writs

*HN3* Relief in the nature of mandamus pursuant to Mass. Gen. Laws Ann. ch. 249, § 5 is appropriate to compel a public official to perform an act which the official has a legal duty to perform. Mandamus is a remedy to be used only as a last resort, when nothing else would work. A court cannot issue a mandamus to compel performance of a discretionary act. The writ of mandamus is an extraordinary remedy granted only to prevent a failure of justice in instances where there is no other adequate and effectual remedy. More Like This Headnote

Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights

Governments > State & Territorial Governments > Employees & Officials

*HN4* The Massachusetts legislature authorizes the Commissioner of the Massachusetts Department of Correction to make and promulgate necessary rules and regulations incident to the exercise of his powers and the performance of his duties including but not limited to rules and regulations regarding safety, discipline, classification, care, and custody for all persons committed to correctional facilities. Mass. Gen. Laws Ann. ch. 124, § 1(q). A plan for handling minor infractions in a prison falls within wide-ranging deference that courts are to accord to prison administrators in adoption and execution of policies and practices. More Like This Headnote

Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights

Governments > State & Territorial Governments > Employees & Officials

*HN5* Before an inmate may file a claim in a Superior Court (Massachusetts), he is first required to exhaust all available administrative remedies. Mass. Gen. Laws Ann. ch. 127, §§ 38E-F. Chapter 127, § 38F provides, in relevant part, that an inmate shall not file any claim that may be the subject of a grievance under § 38E unless the inmate has exhausted the administrative remedy established pursuant to said § 38E. Section 38E instructs the Commissioner of the Massachusetts Department of Correction to promulgate regulations to establish a fair, impartial, speedy, and effective system for the resolution of grievances. The Commissioner promulgates these regulations, Mass. Regs. Code tit. 103, § 491.00 et seq., hereinafter Grievance Regulations. The Grievance Regulations, as required by Mass. Gen. Laws Ann. ch. 127, § 38E, outline the procedure for a prisoner's filing of a grievance, and specify instructions for its processing and appeal. § 38E(a). More Like This Headnote

Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights

*HN6* The Grievance Regulations provide specific directions to the Institutional Grievance Coordinator for processing an inmate's grievance, including interviewing the inmate, reviewing staff efforts to resolve the issue, investigating the grievance, and providing a written proposed resolution or denial of the grievance within 10 working days.

Get a Document - by Citation - 2004 Mass. Super. LEXIS 153        Page 3 of 6

Case 3:04-cv-30246-MAP      Document 31-3      Filed 12/19/2005      Page 4 of 7

Mass. Code tit. 103, § 491.10. If the inmate is not satisfied with the resolution of his grievance, he is afforded the right to appeal to the Superintendent, who is instructed to respond in writing to the inmate's appeal within 30 days. § 491.12. More Like This Headnote

Criminal Law & Procedure > Postconviction Proceedings > Imprisonment & Prisoner Rights

HN7 Mass. Regs. Code tit. 103, § 430.12(3) allows an inmate to record a disciplinary proceeding through the use of tape recording equipment provided by the inmate or his representative. If an inmate is classified as indigent, the regulation allows for a tape of the hearing to be provided for the inmate upon prior request. If an inmate is neither represented by counsel nor indigent, he is unable to record the disciplinary proceeding because § 410.10(5)(e) prohibits his possession of a cassette recorder with recording capabilities. More Like This Headnote

**JUDGES:** Francis R. Fecteau, Justice of the Superior Court.

**OPINIONBY:** Francis R. Fecteau

**OPINION:** MEMORANDUM OF DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

The plaintiff, Howard B. Brown (Brown), is a prisoner in the custody of the Massachusetts Department of Correction (DOC). Acting *pro se*, Brown brought a five-count complaint seeking that this court grant him relief in the form of mandamus pursuant to G.L.c. 249, § 5, or in the alternative grant declaratory relief pursuant to G.L.c. 231A, ordering the DOC to adopt or amend certain regulations on various grounds. Brown moves this court for full summary judgment; the defendant moves to dismiss or, in the alternative, moves for full summary judgment. For the following reasons, the plaintiff's motion for summary judgment is *DENIED* and the defendant's motion for summary judgment is *ALLOWED.*

BACKGROUND

The following facts are taken from Brown's complaint and the parties' motions for summary judgment and exhibits.

On or about December 6, 2002, Brown sent a petition to the defendant Michael T. Maloney **[*2]** (Commissioner) requesting that the DOC amend some of its regulations relating to prison disciplinary hearings. Specifically, Brown requested that the DOC: (1) amend 103 Code Mass. Regs. 430.12(3) relating to the tape recording of disciplinary regulations and; (2) amend 103 Code Mass. Regs. 430.25(1)(b) to limit the period of time for disciplinary sanctions for minor offenses. Brown's request included proposed amendments and extensive "data, views and arguments," in support of his proposals. On July 1, 2003, the Commissioner denied Brown's requests.

On or about February 9, 2003, Brown sent a petition to the Commissioner requesting that the DOC: (1) amend and adopt a regulation for the submission, consideration and disposition of petitions to amend DOC regulations under G.L.c. 30A, § 4; (2) create new regulations governing protective custody units; and (3) renumber the DOC's regulations. Brown's request included proposed amendments and extensive "data, views and arguments," in support of his proposals. On July 1, 2003, the Commissioner responded to Brown, denying his petition to create new regulations **[*3]** governing protective custody units and renumber the DOC regulations. The Commissioner explained that Brown's proposal regarding G.L.c. 30A, § 4 would remain pending because the DOC was in the process of drafting these regulations.

Get a Document - by Citation - 2004 Mass. Super. LEXIS 153    Page 4 of 6

Case 3:04-cv-30246-MAP    Document 31-3    Filed 12/19/2005    Page 5 of 7

Brown also argued the merits of a number of these issues through various letters relating to his own disciplinary hearings. In anticipation of a disciplinary hearing for a prison incident which occurred on September 18, 2002, Brown requested that his disciplinary hearing be tape recorded. In a memorandum dated September 25, 2002, the DOC Disciplinary Office informed him that according to 103 Code Mass. Regs. 430.12(3), he or his representative would be responsible for providing a tape recorder and tapes to record the proceedings. Brown responded in a letter of the same date, noting that he would be unable to provide tape recording equipment because Inmate Property Policy prohibits him from possessing this type of equipment. The disciplinary hearing occurred on October 3, 2002; Brown was not represented by counsel and the hearing was not recorded. Sanctions issued as a result of this 2002 hearing. Brown **[*4]** appealed the sanctions to the Superintendent, and on October 11, 2002, the Superintendent denied his appeal without discussion.

Brown faced disciplinary proceedings again the following year on July 8, 2003, arising from a prison incident which occurred on June 9, 2003. At this disciplinary hearing, Brown was not represented by counsel. A report which documents this 2003 hearing includes a notation that the hearing was not recorded, "in accordance with 103 Code Mass. Regs. 430.12(3)." In his appeal of the sanctions issued at this hearing, Brown raised a number of complaints, including his inability to tape record the hearing and the lack of a specified maximum punishment for minor offenses. The Superintendent denied Brown's appeal, adding only that it had "no merit."

Brown now moves this court for summary judgment. The defendant moves to dismiss or, in the alternative, for full summary judgment, on the grounds that Brown fails to state a valid action for mandamus, lacks standing to request declaratory relief, and has failed to exhaust his administrative remedies pursuant to G.L.c. 127, § 38F.

DISCUSSION

*HN1* Summary judgment **[*5]** shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); *Cassesso v. Comm'r of Corr.*, 390 Mass. 419, 422, 456 N.E.2d 1123 (1983); *Cmty. Nat'l Bank v. Dawes*, 369 Mass. 550, 553, 340 N.E.2d 877 (1976). *HN2* The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. *Pederson v. Time, Inc.*, 404 Mass. 14, 16-17, 532 N.E.2d 1211 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. *Flesner v. Technical Communications Corp.*, 410 Mass. 805, 809, 575 N.E.2d 1107 (1991); *Kourouvacilis v. Gen. Motors Corp.*, 410 Mass. 706, 716, 575 N.E.2d 734 (1991).

I. Mandamus Pursuant to G.L.c. 249, § 5

*HN3* Relief in the nature of mandamus pursuant to G.L.c. 249, § 5 is appropriate to compel a **[*6]** public official to perform an act which the official has a legal duty to perform. *Lutheran Service Assoc. of New England, Inc. v. Metropolitan Dist. Comm'n*, 397 Mass. 341, 344, 491 N.E.2d 255 (1986); *Massachusetts Soc'y of Graduate Physical Therapists v. Board of Registration in Medicine*, 330 Mass. 601, 605-06, 116 N.E.2d 264 (1953). Mandamus is a remedy to be used only as a last resort, when nothing else would work. *Doe v. District Attorney for Plymouth Dist.*, 29 Mass.App.Ct. 671, 674, 564 N.E.2d 588 (1991). Furthermore, a court cannot issue a mandamus to compel performance of a discretionary act. *Lutheran Service*, 397 Mass. at 341, citing *Channel Fish Co. v. Boston Fish Mkt. Corp.*, 359 Mass. 185, 187, 268 N.E.2d 683 (1971). Put another way, "the writ of mandamus is an extraordinary remedy granted only to prevent a failure of justice in instances where there is no other

Get a Document - by Citation - 2004 Mass. Super. LEXIS 153    Page 5 of 6

Case 3:04-cv-30246-MAP    Document 31-3    Filed 12/19/2005    Page 6 of 7

adequate and effectual remedy." *Coach & Six Restaurant, Inc. v. Public Works Commission,* 363 Mass. 643, 644, 296 N.E.2d 501 (1973).

*HN4* The legislature has authorized the Commissioner to "make and promulgate necessary rules and regulations incident to the exercise of his powers and the performance **[*7]** of his duties including but not limited to rules and regulations regarding . . . safety, discipline . . . classification . . . care, and custody for all persons committed to correctional facilities." G.L.c. 124, § 1(q). The Commissioner's choice not to adopt Brown's proposed amendments was well within his discretion. *Id.*; see *Hastings v. Commissioner of Correction,* 424 Mass. 46, 49, 674 N.E.2d 221 (1997); *Messere v. Commissioner of Correction,* 27 Mass.App.Ct. 542, 547-48, 540 N.E.2d 209 (plan for handling minor infractions in prison fell within "wide-ranging deference" that courts are to accord to prison administrators in adoption and execution of policies and practices). Accordingly, Brown has no reasonable expectation of proving that he is entitled to relief in the form of a writ of mandamus pursuant to G.L.c. 249, § 5. *Lutheran Service,* 397 Mass. at 341. Therefore the defendant's motion for summary judgment is allowed.

## II. Declaratory Relief and G.L.c. 127, § 38F

Brown requests that in the absence of a writ of mandamus, this court grant declaratory relief pursuant to G.L.c. **[*8]** 231A. The defendant argues that Brown is not entitled to declaratory relief because he failed to exhaust his administrative remedies as required by G.L.c. 127, § 38F.

*HN5* Before an inmate may file a claim in the Superior Court, he is first required to exhaust all available administrative remedies. G.L.c. 127, §§ 38E-F. General Law c. 127, § 38F provides, in relevant part, that "an inmate shall not file any claim that may be the subject of a grievance under section 38E unless the inmate has exhausted the administrative remedy established pursuant to said section 38E." Section 38E instructs the Commissioner to promulgate regulations to establish a "fair, impartial, speedy and effective" system for the resolution of grievances. G.L.c. 127, § 38E. The Commissioner promulgated these regulations, codified at 103 Code Mass. Regs. 491.00 et seq. (hereinafter "Grievance Regulations"). The Grievance Regulations, as required by G.L.c. 127, § 38E, outline the procedure for a prisoner's filing of a grievance, and specify instructions **[*9]** for its processing and appeal. G.L.c. 127, § 38E(a); 103 Code Mass. Regs. 491.09-491.12.

Brown has not alleged that he has complied with the exhaustion requirements of G.L.c. 127, § 38F. n1 Brown's appeal of the outcome of his disciplinary proceeding cannot act as a substitute. *HN6* The Grievance Regulations provide specific directions to the Institutional Grievance Coordinator for processing an inmate's grievance, including interviewing the inmate, reviewing staff efforts to resolve the issue, investigating the grievance, and providing a written proposed resolution or denial of the grievance within ten working days. 103 Code Mass. Regs. 491.10. If the inmate is not satisfied with the resolution of his grievance, he is afforded the right to appeal to the Superintendent, who is instructed to respond in writing to the inmate's appeal within 30 days. 103 Code Mass. Regs. 491.12.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 G.L.c. 127, § 38F provides for four exceptions to this exhaustion requirement, none of which is present in this case.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*10]**

Get a Document - by Citation - 2004 Mass. Super. LEXIS 153
Page 6 of 6

Case 3:04-cv-30246-MAP    Document 31-3    Filed 12/19/2005    Page 7 of 7

Had Brown submitted his grievances in the proper manner, the Institutional Grievance Coordinator or Superintendent may have resolved his grievances to his satisfaction. Brown's challenge to the DOC's regulations regarding access to tape recording equipment for the recording of disciplinary proceedings may be of interest to the Institutional Grievance Coordinator or Superintendent. n2 Regardless of whether Brown's grievances ultimately would have been denied, however, G.L.c. 127, § 38F instructs that Brown must exhaust these administrative remedies before filing any claim. Accordingly, the defendant's motion for summary judgment is allowed.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n2 Brown argues that his due process and equal protection rights are violated by prison regulations which do not allow him to record disciplinary proceedings. 103 Code Mass. Regs. 430.12(3) *HN7* allows an inmate to record a disciplinary proceeding through the use of tape recording equipment provided by the inmate or his representative. If an inmate is classified as indigent, the regulation allows for a tape of the hearing to be provided for the inmate upon prior request. However, if an inmate is neither represented by counsel nor indigent, he is unable to record the disciplinary proceeding because 103 Code Mass. Regs. 410.10(5)(e) prohibits his possession of a cassette recorder with recording capabilities.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*11]**

ORDER

For the forgoing reasons, it is hereby ORDERED that the plaintiff's motion for summary judgment is DENIED and the defendant's motion for summary judgment is ALLOWED.

Francis R. Fecteau

Justice of the Superior Court

Dated: April 9, 2004

About LexisNexis | Terms and Conditions


Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.