UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

DARREN L. FAVREAU,                    )
     Plaintiff                          )
                   )
     v.                                 )
                   )   Civil Action No.  04-30246-MAP
                   )
BERKSHIRE COUNTY JAIL,                )
     Defendant                          )

### AFFIDAVIT OF JOHN J. QUINN

I, John J. Quinn, being duly sworn, state as follows:

1.     I am the Superintendent at the Berkshire County Jail and House of Correction ("Berkshire County Jail"), which is located at 467 Cheshire Road, Pittsfield, Massachusetts 01201.

2.     I was Deputy Superintendent at the Berkshire County Jail from January 24, 2003 until April 15, 2005, and have been Superintendent there since April 15, 2005.

3.     The named defendant, Berkshire County Jail, is not a juridical entity subject to the jurisdiction of this Court.

4.     The plaintiff was incarcerated at the Berkshire County Jail twice during 2004 - - i.e., once from February 23, 2004 to April 22, 2004, and a second time from September 13, 2004 to November 16, 2004.

5.     On November 16, 2004, the plaintiff was transferred to the Hampden County Jail and House of Correction ("Hampden County Jail"), where he has been incarcerated ever since.

6.     In December of 2003, a new legal resource policy was instituted at the Berkshire County Jail, pursuant to which inmates were no longer permitted to enter the law library themselves, but were given access to legal materials through the so-called "paging system" described in plaintiff's Amended Complaint.

7.     The paging system which was adopted at the Berkshire County Jail in December of 2003 operated - - and, with the modification described in paragraph 10 below, still operates - - as follows:

(a) An inmate who wished to conduct legal research was required to complete and sign a Legal Resources Request Slip.

(b) The Legal Resources Request Slip was forwarded to the law librarian.

(c) If an inmate's request was not clear, the law librarian (or her assistant) would meet with the inmate to clarify it.

(d) If the legal issues presented by an inmate's request were particularly complex, the law librarian (or her assistant) would discuss the matter with the Assistant Deputy Superintendent for Program Development for guidance.

(e) The law librarian (or her assistant) would research the legal issues presented by the inmate's request on the WestLaw database and/or in the hard bound volumes in the law library.

(f) The law librarian (or her assistant) would prepare a "package" of printouts and/or photocopies responsive to the inmate's request, and complete and sign the "response" portion of the Legal Resources Request Slip submitted by the inmate.

(g) A copy of the written "response" and accompanying "package" of materials prepared by the law librarian (or her assistant) would be forwarded to the inmate.

8. Direct inmate access to the law library was curtailed, and the paging system was adopted, in order to address security concerns raised by:

(a) Inmates misusing the law library as a place to socialize and communicate among different "pods" (i.e., housing units) - - e.g., by leaving notes in volumes; and

(b) Logistical problems posed by moving "high risk" inmates to and from the law library while keeping them segregated from others with whom they were likely to either conspire (e.g., codefendants) or engage in altercations (e.g., witnesses against them). These concerns were particularly pressing when the paging system was adopted due to an especially large number of "high risk" inmates at the Berkshire County Jail at that time.

9. The paging system was also adopted because it was a more cost effective method of maintaining the law library collection than the alternative (i.e., continuing to update all of the hard bound volumes) would have been.

10. In April of 2005, the legal resource policy at the Berkshire County Jail was modified so as to restore inmate access to the law library on a prescribed schedule, while still retaining the paging system to handle the majority of legal requests. A copy of a memorandum describing that modification is attached hereto as Exhibit A.

$10_A$. The modification of the legal resource policy in April of 2005 occurred because (a) the Assistant Deputy Superintendent for Program Development who was responsible for overseeing the implementation of the paging system left for health reasons and (b) the security concerns that were so pressing when it was adopted had been alleviated by a drop in the number of "high risk" inmates.

11.    At all relevant times, an administrative procedure has been in place at the Berkshire County Jail to resolve inmate grievances of the sort adverted to in plaintiff's Amended Complaint. A copy of that procedure is attached hereto as Exhibit B.

12.    The inmate grievance procedure in place at the Berkshire County Jail may be summarized as follows:

(a) An inmate who wishes to submit a formal grievance after informal attempts to resolve his grievance with a Housing Officer in his pod have proven unsuccessful must complete and sign an Inmate Grievance Form and submit it within three (or, in unusual cases, eight) working days of the underlying incident to the Housing Officer, who forwards it to the Unit Manager (or designee) responsible for that pod.

(b) The Unit Manager (or designee) investigates and issues a written decision on the bottom of the Inmate Grievance Form within ten working days of receiving that form

(c) An inmate who wishes to appeal the Unit Manager's (or designee's) decision must complete and sign an Inmate Grievance Appeals Form and submit it within three days of receiving that decision to the Housing Officer, who forwards it to the Assistant Deputy Superintendent of Operations.

(d) The Assistant Deputy Superintendent of Operations investigates and issues a written decision on the bottom of the Inmate Grievance Appeals Form within ten working days of receiving that form. The Assistant Deputy Superintendent of Operations' decision is "final except for remedies that might be sought through the appropriate court." See Exhibit B attached hereto.

13.    On March 15, 2004, plaintiff completed and signed an Inmate Grievance Form concerning the operation of the law library ("Grievance No. 1") and submitted it to a Housing Officer, who forwarded it to the Unit Manager for his pod.. A copy of that form is attached hereto as Exhibit C .

14.    On March 16, 2004, the Unit Manager for the plaintiff's pod issued a written response denying Grievance No. 1. See Exhibit C attached hereto.

15.    The plaintiff never submitted an Inmate Grievance Appeals Form concerning the Unit Manager's denial of Grievance No. 1 to the Assistant Deputy Superintendent of Operations.

16.    On April 10, 2004, the plaintiff completed and signed an Inmate Grievance Form concerning the operation of the law library ("Grievance No. 2") and submitted it to a Housing Officer, who forwarded it to the Unit Manager for his pod. A copy of that form is attached hereto as Exhibit D.

17.    On April 14, 2005, the Unit Manager for the plaintiff's pod issued a written response to Grievance No. 2, in which the Unit Manager determinined that the matters raised therein were not grievable. See Exhibit D attached hereto.

18.    The plaintiff never submitted an Inmate Grievance Appeals Form concerning the Unit Manager's decision with respect to Grievance No. 2.

19.    On November 12, 2004, an incident ("the Incident") occurred in which the inmates housed in "Pod B" at the Berkshire County Jail (including the plaintiff) refused correctional officers' orders to clean the floor of their pod and to "lock in" their cells.

20.    As a result of the Incident, a "lockdown" of Pod B occurred.  Copies of the Informational Reports prepared by correctional officers concerning the Incident and ensuing lockdown are attached hereto as Exhibits E, F and G.

21.    A subsequent investigation of Incident revealed that the plaintiff was among the ringleaders behind it.

22.    Pursuant to standard procedure, the plaintiff was transferred to the Hampden County Jail, and the other ringleaders behind the Incident were transferred to other correctional facilities, in order to make it more difficult for them to organize similar incidents in the future

Signed under the pains and penalties of perjury this __9__ day of December, 2005.

_____
John J. Quinn

COMMONWEALTH OF MASSACHUSETTS

Berkshire, ss.

On this __9__ day of December, 2005, before me, the undersigned notary public, personally appeared John J. Quinn, proved to me through satisfactory evidence of identification, which was _drivers license_

_____

to be the person whose name is signed on the preceding document in my presence.

_____
Diane M. Maynes
_____, Notary Public
My commission expires _1/17/08_



# EXHIBIT A



**Berkshire County
Sheriff's Office**

# Memo

**To:**      All Supervisors

**From:**    Brad M. Little
             Assistant Deputy Superintendent / Security Services

**Date:**    April 7, 2005

**Re:**      LAW LIBRARY

---

Effective Thursday April 14, 2005, the Law Library will be available to inmates as follows:

B & C Pods:  Thursdays 9:30am – 10:45am (One week B, the next week C)

G Pod:       Thursdays 2:20pm – 3:35pm

D,E,F,H:     Thursdays 7:30pm – 8:45pm


The current legal services request slip will continue to be used for the majority of legal requests. Marilee Finn will process these as she currently does.

The Law Library will allow access to the legal books as well as to (2) Westlaw computers set up for inmate use. They are the two located closest to the teachers desk.

As with any new endeavor, this is a work in progress, and adjustments will no doubt be necessary. Please give this program your full support.


CC:   D.S. John J. Quinn
      1st ADS Michael Garvey
      ADS Michael McMullen
      ADS Julie Sullivan



### The Commonwealth of Massachusetts
BERKSHIRE COUNTY
OFFICE OF SHERIFF

467 CHESHIRE ROAD
PITTSFIELD, MASSACHUSETTS 01201
TELEPHONE
413-443-7220



CARMEN C. MASSIMIANO, JR.
SHERIFF

JAMES J. MOONEY
SPECIAL SHERIFF

JOHN J. QUINN, JR.
SUPERINTENDENT

MICHAEL W. GARVEY
DEPUTY SUPERINTENDENT

To:        James R. Loughman, Esq.
           Donovan & O'Connor, LLP
           1330 Mass MoCA Way
           North Adams, MA  01247

From:      Diane Maynes, Sheriff's Office

Date:      December 12, 2005

Re:        Darren L. Favreau v. Berkshire County Jail
           Civil No. 04-30246-MAP


Enclosed herewith please find signed and notarized Affidavit of John J. Quinn
relative to the above matter

Hoof-o12'

# EXHIBIT B

BERKSHIRE COUNTY SHERIFF'S OFFICE
JAIL AND HOUSE OF CORRECTION

Policies and Procedures

Page 1 of 1 Pages

March 5, 2001/January 25, 2005<br>Effective Date/Review Date

| | | | |
|---|---|---|---|
| Subject: | Inmate Grievance Procedure | | |
| Distribution: | All Authorized Manuals | | |
| Authority: | | Issued By: | |
| | Sheriff | | Deputy Superintendent |
| References: | BCSO-119 | D.O.C. # | 934.02 |

POLICY:

>   The Berkshire County Sheriff's Office implements inmate grievance procedures which allow inmates to seek timely solutions to legitimate grievances without fear of reprisal. These grievance procedures allow the facility administration to identify and resolve problems in the facility's operation, as well as to help maintain a stable emotional environment for the inmate population. Berkshire County Sheriff's Office will provide all inmates access to an administrative remedy for redress of legitimate complaints.

PROCEDURES:

1. General Information

    A. Details of the inmate grievance procedures are made available to all inmates in at least one of the following ways:

        1) Information is included in the Inmate Rules/Orientation Form which is given to each new inmate during the intake process.

        2) The Orientation Officer verbally explains to inmates the grievance procedures.

        3) Housing Unit staff is trained in the Grievance Procedure and can explain it to inmates.

    B. Under no circumstances are Berkshire County Sheriff's Office staff permitted to interfere with the reporting of a grievance, or to make reprisals against an inmate who has filed a grievance.

    C. Inmates that need assistance filling out the form because they cannot read, write or speak English, or inmates who have questions, are assisted by staff.

    D. Only one grievance may be submitted on a Grievance Form, and only an individual inmate (not a group or a representative of a group of inmates) may file a grievance.

    E. The Unit Manager/designee is responsible for involving in the investigation and decision making process pertinent staff, including staff that do not work in the Unit.

    F. Inmates have three working days to initiate a grievance. An extension of an additional five working days may be granted at the discretion of the Unit Manager/designee for an unusual situation that does not allow the inmate to file the grievance in a timely manner. Requests for extensions are made on Inmate Request slips and are directed to the Unit Manager.

G. The Unit Manager/designee has ten working days from receipt of the grievance to respond and resolve in writing an inmate grievance. If additional time is needed to resolve the grievance then the inmate is notified in writing during the first ten days of the action necessary to resolve the grievance.

H. If the Unit Manager/designee is directly involved in the issue being grieved, they must withdraw from the investigation process. Another Unit Manager or staff member of higher rank is then designated to investigate and track that particular grievance.

I. Each inmate of the Berkshire County Sheriff's Office is entitled to initiate a grievance regardless of the inmate's administrative, disciplinary or classification status within the facility.

2. The Grievance Process

A. An inmate who has a grievance initiates the complaint with the Housing Officer who attempts to resolve the grievance in an informal manner. If the inmate is not satisfied with the resolution presented, they are instructed that they may obtain a Grievance Form from the Housing Officer.

B. The inmate obtains the Grievance Form and the Housing Officer instructs the inmate to fill it out and detail their attempt at informal resolution.

C. When the inmate has completed and signed the Inmate Grievance Form, the inmate gives it to the Housing Officer who ensures it has been completed properly and, forwards it to the Unit Manger/designee.

D. The Unit Manager/designee reviews the form to ensure it has been completed properly, checking in particular for information detailing the informal attempts to address the issue, if appropriate.

E. The Unit Manager/designee depending on the type of grievance begins to investigate the situation by interviewing, if appropriate and/or applicable: the inmate with the grievance, other inmates and involved staff persons of the department related to the grievance along with the staff (or other staff person) with whom the informal resolution was sought.

F. In addition to interviewing staff members, the Unit Manager/designee may ask the involved staff to write a response to the grievance on an Informative Report. An involved staff person may initiate the written response without being asked.

G. The staff person completes the Informative Report as directed and returns a copy of it to the Unit Manager/designee.

3. The Appeal Process

A. If the inmate is not satisfied with the decision, the inmate may appeal to the Assistant Deputy Superintendent of Operations within three days of receiving the decision by completing an Inmate Grievance Appeal Form. This form can be obtained from the Housing Officer.

B. The Assistant Deputy Superintendent of Operations processes the appealed Inmate Grievance Form in accordance with the investigative procedures in General Information listed above.

C. The Assistant Deputy Superintendent of Operations informs the inmate of the finding of the appeal on the Inmate Grievance Appeal Form within ten working days of receipt of the appeal.

D. The decision on the appeal by the Assistant Deputy Superintendent of Operations is deemed as final except for remedies that might be sought through the appropriate court.

4. Review of Inmate Grievances

A. Unit Managers, as needed, review their own grievances in order to ensure that the grievance procedures have been consistently and appropriately implemented, and to determine any patterns of problems.

B. The Unit Managers develop their own strategy to correct any problem areas discovered, and may discuss this at the weekly administrative meetings.

# EXHIBIT C

**BERKSHIRE COUNTY SHERIFF'S OFFICE**

## INMATES GRIEVANCE FORM

NAME: _Darian Favreau_

POD _P_    CELL # _106_

Did you try to informally resolve your problem with the pod officer/staff person?

Yes _X_    .    No _____

If the answer is yes, list the pod officer/ staff person you talked to.

_Dont know name_

Nature of Complaint (please be brief and specific)

_That I cant use the law library when I dont have a_
_court. I cant stop doen time I was till it is a_
_violation of my constitutional rights I want to_
_do my own research_

Signature _Darian Favreau_    Date: _3_ / _15_ / _04_

- - - - - - - - - - - - - - - INMATES DO NOT WRITE BELOW THIS LINE - - - - - - - - - - - - - - - - - -

DATE GRIEVANCE RECEIVED: _3_ /_16_ /_04_

UNIT MANAGER/DESIGNEE RESPONSE:

_you have the right to access the law library, which_
_we provide. There is nothing in the constitution stating_
_you have to go to the law library_

Not Grievable [ ] Remedied [ ]    Denied [X]    Appealed [ ]

Unit Manager/Designee's Signature: _May Dube_    Date: _3_ /_16_ /_04_

# EXHIBIT D

**BERKSHIRE COUNTY SHERIFF'S OFFICE**

## INMATES GRIEVANCE FORM

NAME: _Darren FAVreau_

POD _P_    CELL # _105_

Did you try to informally resolve your problem with the pod officer/staff person?

Yes _X_    No _____

If the answer is yes, list the pod officer/ staff person you talked to.

_____

_____

Nature of Complaint (please be brief and specific)

On 4-9-04 ~~the~~ Sargent Farly brought leagel work Tome but
I was outside rec. ~~~~ so he decided to leave instead of calling me in. Then he brought the
wrong book To me at 2:30Pm with minamal time to use. Then he promised To bring
then Tome today but he is working another Pod then is off for the next
two days. This is in violation of my civil writes I can view law in law
in my cell.

Signature _Darren Favreau_    Date: _4 / 10 / 04_

- - - - - - - - - - - - - - - - - - INMATES DO NOT WRITE BELOW THIS LINE - - - - - - - - - - - - - - - - - - - -

DATE GRIEVANCE RECEIVED: _4 / 12 / 04_

UNIT MANAGER/DESIGNEE RESPONSE:

There is no violation of your civil right, Law Library
is available Tues through Friday. SGt Farley is not
required to bring law books to your Pod.

_____

Not Grievable [✓] Remedied [ ]    Denied [ ]    Appealed [ ]

Unit Manager/Designee's Signature: _May Deub_    Date: _4 / 14 / 04_

# EXHIBIT E



# Berkshire Sheriff's Office

## Informational Report

**Report Date:** 2004/11/12    **Incident Date:** 2004/11/12    **Incident Time:** 15:15

**Name/Event:** Narrative                                    **Booking #:** 0
**Location:** bravo pod                    **Reporting Officer:** SHAUN AITKEN
**Persons Involved:**
**Report Subject:** pod refusal to lock in
**Work Type:**

### NARRATIVE

On above date at 1400 I receive d a call from CCR stating that bravo pod was refusing to lock in. After notifying ADS Little and Captain McMahon I preceded to bravo pod to address the issue. The climate was evaluated. I retreated from the pod and went to CCR to receive further instructions. At 1415 I received instructions from DS Quinn to assemble move teams with the available staff. 22 officers from transportation,kitchen,visits and the 2nd shift responded and suited up in full riot gear. A pod meeting was conducted by ADS Little, Captain McMahon, Major Mauer and Sgt Derose.At 1430 I received orders from DS Quinn to stand down but remain suited up until the intelligence had been gathered from the pod meeting. At 1440 I received orders from DS Quinn to dress down and debrief the entire 1st shift on the incident that took place in bravo pod. The debriefing took place in the training room

DATE  | ACTION ENTERED BY  | STATUS OF CORRECTIVE ACTION        | Comp.

**Action(s) Completed:** 2004/11/12
**FSC Reviewed:** Lt Shaun M Aitken

# EXHIBIT F



# Berkshire Sheriff's Office
## Informational Report

**Report Date:** 2004/11/12    **Incident Date:** 2004/11/12    **Incident Time:** 15:28

**Name/Event:** NARRATIVE    **Booking #:** 0
**Location:** POD B    **Reporting Officer:** RICHARD DEROSE
**Persons Involved:**
**Report Subject:** POD REFUSED TO LOCK IN
**Work Type:**

NARRATIVE

At around 1:55pm I was asked to come into B pod by officer Martins because the pod was not listening to the pod officers orders .

I arrived and noticed the TV's were off and the showers were also shut off. The pod was very defiant towards officers Landquist and Martins .The orders of the officers were given to lock in at 2:00pm and were refused by the whole pod .I called the shift supervisor LT.Aitken and central control and notified them of the situation. A lock down was called twice by the officers and was refused by the pod population.

At this point A.D.S. Little,Captain McMahon ,LT.Aitken ,Major Mauer and officers Salvie and Vincent arrived at B pod.

I noticed the pod was not complying with the officers orders to lock in so I called a pod meeting with the inmate population and got some of the issues on the table. The climate of the pod was calmed down and the pod agreed to lock in at 2:30pm as scheduled.

The pod officers felt that the condition of the pod dayroom was not clean and that the respect for the pod and the staff was at a all time low.

The pod was addressed about their expectations and the pod officers were interviewed as to the problems that have existed. The pod population and the officers were notified that a pod meeting will happen again in the near future to avoid future problems. The pods demeanor was positive at lock down and it appeared that the tensions have subsided at the present moment. All the pod officers were addressed and told to keep a high alert to the possible problems in B pod.

DATE  | ACTION ENTERED BY  | STATUS OF CORRECTIVE ACTION        | Comp.

**Action(s) Completed:** 2004/11/12
**FSC Reviewed:**

Printed:    11/18/2005    13:10          Page  1

# EXHIBIT G



# Berkshire Sheriff's Office
## Informational Report

**Report Date:** 2004/11/13    **Incident Date:** 2004/11/12    **Incident Time:** 14:00

**Name/Event:** Pod refused to lock in                        **Booking #:** 0
**Location:** POD B                  **Reporting Officer:** bryan martins
**Persons Involved:**
**Report Subject:** Bravo Pod refused to lock in
**Work Type:**

### NARRATIVE

On the date and approximately 2:00pm, Bravo pod was not up to the BCHC standards for
cleanliness. The floor had abundance of candy wrappers, cheddar fry bags and other items all
over the floor. Over the intercom, I asked the inmates to please, pick up any candy wrappers
that were on the floor. The inmates refused. I repeated my request and received negative results.
I then informed the section that if my request were not met, the section would have to secure for
an early cleaning detail (scheduled lock in time is @ 2:30 pm). The inmates became loud and
disruptive. I then ordered the section to lock in. The section refused. I informed Sgt. Derose of
the situation. Sgt. Derose, Lt Aitken, Capt. McMahon, ADS. Little and Major Mauer entered the
section and at that time they were briefed on the situation. Sgt. Derose then addressed the pod
on the BCHC standards that the inmates must uphold in the pod and on other concerns that the
inmates wanted addressed. At approximately 2:40 pm the inmates were secured.

DATE | ACTION ENTERED BY | STATUS OF CORRECTIVE ACTION | Comp.

**Action(s) Completed:** 2004/11/13
**FSC Reviewed:** Lt Shaun M Aitken

Printed:    11/18/2005   13:15         Page  1